**IN THE UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| (1) TIMOTHY HANKINS, JR., | ) | |
| Plaintiff, | ) ) ) | |
| vs. | ) ) | Case No. 22-CV-515-TCK-CDL |
| (1) DARIN EHRENRICH and, (2) CITY OF TULSA, | ) ) ) ) | Judge Kern |
| Defendants. | ) ) | |

### **DEFENDANT CITY OF TULSA'S MOTION TO DISMISS AND BRIEF IN SUPPORT**

Defendant City of Tulsa ("Defendant" or "City") respectfully moves this court to dismiss all of Plaintiff's claims for relief against the City in accordance with Federal Rule of Civil Procedure 12(b)(6). In support of its motion, the City would show the Court the following:

### **INTRODUCTION**

Plaintiff was arrested and charged with first degree rape following an investigation conducted by the Tulsa Police Department. Because the Tulsa County District Attorney's Office recused, the case was reviewed and prosecuted by the Payne County District Attorney's Office. Lt. Ehrenrich was the lead investigator on the case and prepared a probable cause affidavit alleging that Plaintiff committed first degree rape. That probable cause affidavit was submitted to the Payne County District Attorney's Office along with a complete copy of the investigative file.

The Payne County District Attorney's Office reviewed the submitted packet and determined that it should be submitted to the Tulsa County District Court. Upon review of the probable cause affidavit, a Tulsa County District Court judge determined there was

1

probable cause to arrest Plaintiff. At the preliminary hearing, a Tulsa County District Court judge determined that there was sufficient probable cause to bind over Plaintiff for jury trial.

At that jury trial, Plaintiff's counsel demurred at the close of the State's case. The demurrer was overruled, and the case proceeded. Ultimately, Plaintiff was found not guilty by the jury and acquitted. Plaintiff now brings the present case against the City of Tulsa and Lt. Darin Ehrenrich.

### ARGUMENT AND AUTHORITIES

**A.   STANDARD FOR MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM.**

The current standard to be followed by a district court when considering a motion to dismiss under Rule 12(b)(6) was summarized by the Tenth Circuit in *Robbins v. State of Oklahoma, ex rel. Dept. of Human Services,* 519 F.3d 1242 (10th Cir. 2008), as follows:

> [T]o withstand a motion to dismiss, a complaint must contain enough allegations of fact "to state a claim to relief that is plausible on its face." [*Bell Atlantic Corp v. Twombly*]*,* 550 U.S. 544, 570, (2007). Under this revised standard, as we explained in *Ridge at Red Hawk, L.L.C. v. Schneider:*
>
>> the mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims.
>
> 493 F.3d 1174, 1177 (10th Cir. 2007) (emphasis in original). The burden is on the plaintiff to frame a "complaint with enough factual matter (taken as true) to suggest" that he or she is entitled to relief. *Twombly*, 550 U.S. at 556. "Factual allegations must be enough to raise a right to relief above the speculative level." *Id*. at 555.

519 F.3d at 1247 (emphasis in original); *see also Dodds v. Richardson,* 614 F.3d 1185, 1202 (10th Cir. 2010).

As the Supreme Court instructed in *Iqbal*, "[w]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Ashcroft v. Iqbal,*

2

536 U.S. 662, 679, (2009) (quoting Fed.R.Civ.P. 8(a) (alterations in original)). In other words, a claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice." *Id*.

The trial court must insist that the plaintiff put forward specific, non-conclusory factual allegations, to assist the court in determining whether the complaint is plausible. *Robbins,* 519 F.3d at 1249*.* In the context of § 1983 claims, "plausibility" refers to the scope of the allegations in the complaint. If they are "so general that they encompass a wide swath of conduct, much of it innocent" or if the allegations are no more than "labels and conclusions" or "a mere formulaic recitation of the elements of a cause of action" then such allegations may be inadequate to overcome a motion to dismiss. *Id.* at 1247-48.

Importantly, a complaint must present factual allegations that "raise a right to relief above the speculative level." *Twombly,* 550 U.S. at 555. While Plaintiff has provided factual allegations, it is clear that, even if true, they fail to establish a constitutional violation and they are inadequate to overcome a motion to dismiss.

**B.      THIS COURT CAN CONSIDER THE PROBABLE CAUSE AFFIDAVIT AND DOCKET.**

Generally, the sufficiency of a complaint must rest on its contents alone. *See Casanova v. Ulibarri*, 595 F.3d 1120, 1125 (10th Cir. 2010). There are three exceptions to this general principle, however. First, the Court may consider documents that the complaint incorporates by reference. E.g. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.,* 551 U.S. 308, 322 (2007).

3

Second, the Court may consider "documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity." *Jacobsen v. Deseret Book Co.,* 287 F.3d 936, 941 (10th Cir. 2002). Under those circumstances, a defendant may submit an indisputably authentic copy which may be considered in ruling on a motion to dismiss. *GFF Corp. v. Associated Wholesale Grocers, Inc.,* 130 F.3d 1381, 1384 (10th Cir.1997).

Third, the Court may consider "matters of which a court may take judicial notice." *Tellabs, Inc., 551 U.S. at 322; U.S. v. Mendoza,* 698 F.3d 1303, 1307 (10th Cir. 2012) ("dockets are generally public documents" which courts may take judicial notice of).

The Probable Cause Affidavit submitted is both incorporated by reference and a document that is central to Plaintiff's claim. Plaintiff references the Probable Cause Affidavit alleging that it is faulty and therefore the basis for Plaintiff's claims. Additionally, Plaintiff alleges that certain facts were omitted from the Affidavit, resulting in a violation of Plaintiff's Fourth Amendment rights.

Because the Probable Cause Affidavit is both central to the claim and incorporated by reference, it is proper for the Court to consider without converting this Motion to Dismiss to a Motion for Summary Judgment. A copy of the Probable Cause Affidavit filed with the District Court is therefore attached as Exhibit 1 with personal identifiers redacted.

Additionally, a copy of the docket from Case CF-2020-5224, State of Oklahoma v. Timothy Francis Hankins, Jr. is attached as Exhibit 2. It is proper for this Court to consider this docket sheet without converting this Motion because it is a matter of which this Court may take judicial notice.

**C.   THERE WAS NO CONSTITUTIONAL VIOLATION FOR FALSE ARREST BECAUSE ARGUABLE PROBABLE CAUSE EXISTED TO ARREST HANKINS.**

Plaintiff claims that he was both arrested and prosecuted without sufficient probable cause. To sustain a claim for false arrest, "an arrestee's constitutional rights were violated if the arresting officer acted in absence of probable cause that the person had committed a crime." *Kaufman v. Higgs,* 697 F.3d 1297, 1300 (10th Cir. 2012). An arrest is constitutional if "at that moment the facts and circumstances within [the officer's] knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the petitioner had committed or was committing an offense. *Beck v. State of Ohio*, 379 U.S. 89, 91, (1964).

"The proper inquiry in a § 1983 claim based on false arrest is not whether the person arrested actually committed an offense, but whether the arresting officer had probable cause to believe that he had." *Crawford ex. rel. Crawford v. Kansas City, Kansas*, 952 F. Supp. 1467, 1474 (D. Kan. 1997) (citing *Dowling v. City of Philadelphia*, 855 F.2d 136, 141 (3d Cir. 1988)). Based on the established standards, Plaintiff's Complaint lacks sufficient factual allegations to support a claim for false arrest.

The Probable Cause Affidavit (Ex. 1) contained sufficient information to support a finding of probable cause. Plaintiff claims that Lt. Ehrenrich omitted facts which would negate that finding. When analyzing affidavits to determine the presence of probable cause, the Courts apply the doctrine found in *Franks v. Delaware*, 438 U.S. 154 (1978). *Kapinski v. City of Albuquerque* applies the *Franks* Doctrine to the 10th Circuit. 964 F.3d 900 (10th Cir. 2020). As established in *Kapinski*, Plaintiff must show both that the affidavit contains omitted information that, if included, would have negated the finding of probable cause *and* that Lt. Ehrenrich acted recklessly in omitting the information. *Id.* at 905. Plaintiff fails to meet either

5

burden in his Complaint and thus it fails as a matter of law. Specifically, Plaintiff lists nineteen allegedly omitted facts. None of these alleged facts would have caused the arrest warrant to fail to issue. Each allegation is addressed below.

**1. "Lt. Ehrenrich had a pre-existing professional relationship with Ms. Nix."**

An existing professional relationship does not somehow negate the statements made by Nix regarding the rape. Furthermore, Lt. Ehrenrich corroborated Nix's statements by speaking to three other individuals who came into contact with her before and after the incident. The inclusion of this statement would have had no bearing on the Trial Court's determination.

**2. "Ms. Nix stated that she only had "one or two" drinks on September 5 despite ample evidence this was a lie."**

While the City disputes the accuracy of this alleged fact, it is treated as accurate for the purposes of this Motion. The Probable Cause Affidavit did not include a specific number of drinks, instead simply stating that she remembered getting drinks and began to black out. Importantly, Hankins makes the assertion that this "lie" was omitted, but provides no facts that would support that assertion, despite there being "ample evidence." The inclusion of this statement would have had no bearing on the Trial Court's determination.

**3. "It was not unusual for Ms. Nix to experience memory loss when drinking alcohol."**

While the City disputes the accuracy of this alleged fact, it is treated as accurate for the purposes of this Motion. The Probable Cause Affidavit indicates that Nix blacked out for much of the encounter with Hankins. Plaintiff contends that the inclusion of this "fact" would somehow negate probable cause. Again, Plaintiff's contention is meritless. The inclusion of this statement would have had no bearing on the Trial Court's determination.

4. **"Nix recalls willingly going to Mr. Hankins' house with him and having physical contact with him in the kitchen."**

While the City disputes the accuracy of this alleged fact, it is treated as accurate for the purposes of this Motion. While the Probable Cause Affidavit actively disputes this contention, Nix's willingness to go to a residence or even engage in physical contact with Plaintiff would not negate a finding of probable cause. An individual can certainly be raped at a location they willingly went to by a person with whom they otherwise consented to some level of physical contact. The inclusion of this statement would have had no bearing on the Trial Court's determination.

5. **"the lab test results showed there were no drugs, aside from a prescription amphetamine, in Ms. Nix's system"**

The Probable Cause Affidavit makes no contention that Ms. Nix was drugged. Instead, the Probable Cause describes Nix's description of her own physical and mental state, witnesses Spencer Snow and Jeff Dickason's descriptions of Nix's physical and mental state, the lab result showing a blood alcohol level of .18 approximately three hours after the incident, and a description of her physical state as depicted in the surveillance video. Lt. Ehrenrich makes no conclusions or allegations regarding other substances besides alcohol, so the inclusion of this statement would have had no bearing on the Trial Court's determination.

6. **"lab analysis showed that Ms. Nix had DNA from at least two other males on her body"**

Both eyewitnesses and surveillance video placed Nix with Hankins during the time that she was assaulted. The Probable Cause Affidavit listed this evidence, as well as the DNA finding that Hankins cannot be excluded as a contributor. Furthermore, Hankins admits in his Complaint that he had sexual intercourse with Nix. [Doc. 2, p. 5 at ¶36]. There has never

7

been a question of whether a sexual encounter occurred in this case. Additionally, under Oklahoma's Rape Shield statute, "[e]vidence of specific instances of sexual behavior of an alleged victim with persons other than the accused offered on the issue of whether the alleged victim consented to the sexual behavior with respect to the sexual offense alleged." 12. O.S. §2412(A)(2). This alleged evidence, even if probative, could not be used to as evidence in this case. The inclusion of this statement would have had no bearing on the Trial Court's determination. Furthermore, it's inclusion here seems only to seek to shame and embarrass a rape victim when there is clearly no issue of fact as to whether sexual intercourse occurred.

### 7. The surveillance video from Mr. Hankins' patio shows Ms. Nix wide awake and initiating physical contact with Mr. Hankins"

While the City disputes the accuracy of this alleged fact, it is treated as accurate for the purposes of this Motion. A description of the surveillance video is included in the Probable Cause Affidavit. Exhibit 1. The inclusion of a statement that Nix was wide awake, would not change the fact that she is seen having "clear difficulty maintaining balance" and "appears to fall asleep. *Id*. Additionally, whether Nix initiated physical contact with Hankins has no bearing on whether probable cause of the rape exists. Hankins seems to argue that an individual consented to some level of physical contact consents to rape and there is no legal basis for this contention. The inclusion of this statement would have had no bearing on the Trial Court's determination.

### 8. "The surveillance video from Mr. Hankins' patio shows Ms. Nix jumping into Mr. Hankins' lap, straddling hm and placing her hands between his legs"

The analysis here is identical to that in the preceding paragraph. Whether Nix initiated physical contact with Hankins has no bearing on whether probable cause of the rape

exists. The inclusion of this statement would have had no bearing on the Trial Court's determination.

9. **"the surveillance video from Mr. Hankins' patio shows Ms. Nix positioning her arms around Hankins' neck and throwing her legs around his waist"**

The analysis here is identical to that in the preceding paragraph. Whether Nix initiated physical contact with Hankins has no bearing on whether probable cause of the rape exists. The Probable Cause affidavit does list that Hankins carried Nix inside. The inclusion of this statement would have had no bearing on the Trial Court's determination.

10. **"Three to six minutes of the contact between Hankins and Nix – on the patio – was not recorded"**

Lt. Ehrenrich can only formulate a finding of probable cause based on the evidence available to him. A lack of video footage for a period of time has absolutely no bearing on a finding of probable cause. The inclusion of this statement would have had no bearing on the Trial Court's determination.

11. **"After their contact at Mr. Hankins' house, Mr. Hankins took Ms. Nix to her house to help her look for her keys"**

While the City disputes the accuracy of this alleged fact, it is treated as accurate for the purposes of this Motion. Whether Hankins took Nix home to look for her keys is not probative of whether Hankins raped her a short time before. The inclusion of this statement would have had no bearing on the Trial Court's determination.

12. **"Ring Video" from Nix's home, after the alleged "rape" shows Hankins and Nix communicating on friendly terms"**

While the City disputes the accuracy of this alleged fact, it is treated as accurate for the purposes of this Motion. There is no requirement that a rape victim communicate with their rapist in a certain manner following the rape, particularly with the perpetrator is

known to the victim. The inclusion of this statement would have had no bearing on the Trial Court's determination.

13. **"Ring" video from Nix's home, after the alleged "rape", shows Nix is fully conscious"**

While the City disputes the accuracy of this alleged fact, it is treated as accurate for the purposes of this Motion. The Probable Cause Affidavit lists witnesses before and after the incident, as well as describing the patio footage. The inclusion of this statement would have had no bearing on the Trial Court's determination.

14. **"Nix never told the SANE nurse, nor any investigator that she was unconscious during her contact with Mr. Hankins"**

While the City disputes the accuracy of this alleged fact, it is treated as accurate for the purposes of this Motion. Lt. Ehrenrich had ample evidence as to the lack of capacity requisite in this case and presented that evidence in the Probable Cause Affidavit. Again, there is no requirement that Nix make say any particular word to establish that she was raped. The inclusion of this statement would have had no bearing on the Trial Court's determination.

15. **Ms. Nix "den[ied] any pain ... or notable injuries" after her contact with Hankins"**

While the City disputes the accuracy of this alleged fact, it is treated as accurate for the purposes of this Motion. There is no requirement that a rape victim by physically injured by the perpetrator. The Probable Cause Affidavit does not make any assertions that this statement would somehow counter. The inclusion of this statement would have had no bearing on the Trial Court's determination.

16. **"Ms. Nix admitted that she had sex with Mr. Hankins, but never stated that any sex with Mr. Hankins was forced or nonconsensual"**

While the City disputes the accuracy of this alleged fact, it is treated as accurate for the purposes of this Motion. There is no talismanic language that must be communicated by a rape victim to an investigator required to establish that a rape occurred. Nix went to Hillcrest specifically to be seen by a Sexual Assault Nurse. During the investigation, she relayed her recollection to Lt. Ehrenrich of the Tulsa Police Department Special Victims Unit. She did everything that a rape victim should do to ensure that the evidence of their rape can bring the perpetrator to justice. The Probable Cause Affidavit clearly lays out the information available to Lt. Ehrenrich which supports a finding of probable cause. The inclusion of this statement would have had no bearing on the Trial Court's determination.

17. **"Ms. Nix did not tell the SANE nurse, nor any investigator, that she was "raped"**

This statement does not even warrant a counterargument, but, for the sake of consistency, it is addressed here. This "omission" is just as confusing as the preceding statement. There is absolutely no requirement that a rape victim say the word "rape" for the crime to have occurred. The inclusion of this statement would have had no bearing on the Trial Court's determination.

18. **"no "date rape" drug, such as "Rohpynol" or "HGB", was found at Mr. Hankins' home, nor in Ms. Nix's blood or urine"**

The Probable Cause Affidavit makes no contention that Ms. Nix was drugged. Instead, the Probable Cause describes Nix's description of her own physical and mental state, witnesses Spencer Snow and Jeff Dickason's descriptions of Nix's physical and mental state, the lab result showing a blood alcohol level of .18 approximately three hours after the incident, and a description of her physical state as depicted in the surveillance video. Lt. Ehrenrich makes no conclusions or allegations regarding other substances besides alcohol,

so the inclusion of this statement would have had no bearing on the Trial Court's determination.

### 19. "even after submitting to a SANE examination, Ms. Nix sent a text to Hankins, not to accuse him of raping her, but to ask whether he had found her keys"

There is no requirement that a rape victim communicate with their rapist in a certain manner following the rape, particularly with the perpetrator is known the victim. The inclusion of this statement would have had no bearing on the Trial Court's determination.

Despite Plaintiff's contention that "the Probable Cause Affidavit is far more notable for what Lt. Ehrenrich left out," none of the alleged omissions would have had any bearing on the finding of probable cause. [Doc. 2, p. 12 at ¶93]. The Affidavit was not "materially incomplete," as it clearly contained all of the evidence required by the reviewing judge. [Doc. 2, p. 14 ¶95]. Plaintiff fails to provide sufficient evidence that he was arrested without probable case and instead relies on conclusory and misleading statements. Therefore, Plaintiff has failed to establish a constitutional violation for false arrest and no liability can attach to the City.

### D. THERE WAS NO CONSTITUTIONAL VIOLATION FOR MALICIOUS PROSECUTION BECAUSE ARGUABLE PROBABLE CAUSE EXISTED TO PROSECUTE HANKINS.

Plaintiff claims that his constitutional rights were violated by his continued prosecution without probable cause. the City incorporates all of the arguments made above but would add the following demonstrating prior findings of probable cause.

Plaintiff was arrested based on an arrest warrant issued on November 23, 2020. The Probable Cause Affidavit submitted by Lt. Ehrenrich was the basis for said arrest. While Plaintiff argues that the probable cause affidavit omitted facts, there were several procedural checkpoints in the case that affirmed the finding of probable cause. First, a preliminary

hearing was held on April 28, 2021 and May 19, 2021. Exhibit 2. At that hearing, five witnesses were sworn. *Id.* Plaintiff demurred and the judge overruled the demur, indicating that there was probable cause for the continued prosecution of Plaintiff. *Id.*

Second, a jury trial was held. On April 29, 2022, *Id.* Plaintiff demurred following the close of the State's evidence. The demurrer was overruled, again indicating the presence of probable cause. *Id.* Next, Plaintiff presented evidence in his defense and moved for a directed verdict. *Id.* The motion for directed verdict was overruled, again indicating the presence of probable cause. *Id.* The only mention of this process by Plaintiff is that of his ultimate acquittal. While the State may have failed to meet the criminal burden of beyond a reasonable doubt, the burden of probable cause had been met multiple times.

Plaintiff's claim for malicious prosecution fails as a matter of law. Not only does Plaintiff fail to demonstrate that there was a lack of probable cause, neutral detached magistrates, in the form of Tulsa County District Court judges, determined on multiple occasions that there was probable cause for the prosecution to proceed. Accordingly, Plaintiff has failed to establish a constitutional violation for malicious prosecution, therefore no liability can attach to the City.

E.  **PLAINTIFF'S PETITION FAILS TO STATE A CLAIM FOR MUNICIPAL LIABILITY.**

It is well-established that a municipality may not be held liable under Section 1983 solely because its employees inflicted injury on the plaintiff. *See Hinton v. City of Elwood*, 997 F.2d 774, 782 (10th Cir. 1993). Instead, the law requires the plaintiff demonstrate (1) the existence of a municipal policy or custom, (2) a direct causal link between the policy or custom and the constitutional injury alleged, and (3) "that the municipal action was taken

with 'deliberate indifference' to its known consequences." *See Kramer v. Wasatch Cnty. Sheriff's Office*, 743 F.3d 726, 759 (10th Cir. 2014).

Plaintiff makes no factual allegations to support his claim for municipal liability and, as such, the City is entitled to dismissal. A claim for municipal liability under §1983 must contain "factual allegations that a particular municipal custom or policy was the moving force behind the constitutional injury in order to withstand a Rule 12(b)(6) dismissal." *Soto for estate of Jimenez v. Bd. of Cnty. Commissioners of Caddo Cnty., Okla.*, 748 F. App'x 790, 794 (10th Cir. 2018).

A claim for municipal liability is insufficient when "[a]side from conclusory statements, no allegations in the complaint give rise to an inference that the municipality itself established a deliberate policy or custom that caused [Plaintiff's] injuries. *Mocek v. City of Albuquerque*, 813 F.3d 912, 934 (10th Cir. 2015).

In Plaintiff's Complaint, he merely provides conclusory statements to support his claim for municipal liability, similar to the Plaintiff in *Mocek.* Plaintiff lists seven different policies or customs without providing a single factual allegation in support of any of the policies or customs. Instead, Plaintiff's allegations are precisely the "threadbare recitals of a cause of action's elements, supported by mere conclusory statements" addressed by the Supreme Court in *Iqbal.* Ashcroft v. Iqbal, 556 U.S. 662, 663 (2009). Without any factual allegations to support its conclusory statements, Plaintiff's Complaint fails as a matter of law and should be dismissed pursuant to Rule 12(b)(6).

## CONCLUSION

For the reasons set forth herein, Defendant City of Tulsa respectfully requests this Court dismiss all claims against Defendant City of Tulsa in Plaintiff's Petition.

Respectfully submitted,

CITY OF TULSA, OKLAHOMA
a municipal corporation

JACK C. BLAIR,
City Attorney

By: /s/Hayes T. Martin
Hayes T. Martin, OBA #32059
Assistant City Attorney
T. Michelle McGrew, OBA #20279
Senior Assistant City Attorney
City Hall @ One Technology Center
175 E. Second Street, Suite 685
Tulsa, Oklahoma 74103
Telephone (918) 596-7717
Facsimile (918) 596-9700

## CERTIFICATE OF SERVICE

I, Hayes T, Martin, hereby certify that on the 20th day of December, 2022, I electronically transmitted the foregoing document to the Clerk of the Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants:

Daniel E. Smolen
Robert M. Blakemore
Smolen & Roytman, PLLC
701 S. Cincinnati Ave.
Tulsa, Oklahoma 74119
P: (918) 585-2667
F: (918) 585-2669

/s/Hayes T. Martin
Hayes T. Martin