# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| TIMOTHY HANKINS, Jr. | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 22-CV-515-TCK-CDL |
| | ) |
| DARIN EHRENRICH, *et al.*, | ) |
| | ) |
| Defendants. | ) |

## OPINION AND ORDER

Before the Court are motions to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), brought by defendant City of Tulsa (Tulsa) and defendant Darin Ehrenrich (Ehrenrich) (collectively, Defendants). (Docs. 8, 9).[1] Plaintiff Timothy Hankins, Jr., (Plaintiff) filed a response to each motion, (Docs. 13, 14),[2] and Defendants did not file a reply.

### I.     BACKGROUND

This case arises from criminal charges filed in Tulsa County, Oklahoma, against Plaintiff for First Degree Rape and Sexual Battery. The criminal charges stem from events that transpired between Plaintiff and the alleged victim, A.N., in September 2020. According to the complaint, Plaintiff had been first introduced to A.N. on September 2, 2020, and after a brief meeting, they agreed to meet again for drinks on September 5, 2020. (Doc. 2 at 3-4). On September 5, 2020, at

---

[1] The Court notes that, although Defendants' motions to dismiss are filed as two, separate documents, they are virtually identical. The only observable difference between the two motions is an additional section in Tulsa's motion to dismiss regarding municipal liability. Thus, unless specifically noted, the Court will cite to Tulsa's motion to dismiss, Doc. 8, for the purposes of this opinion and order.

[2] Plaintiff's response to Ehrenrich's motion to dismiss merely incorporated the same arguments raised in response to Tulsa's motion to dismiss. Thus, for purposes of this opinion and order, the Court will cite only to Plaintiff's response to Tulsa's motion to dismiss (Doc. 13).

9:45 p.m. Plaintiff and A.N. met at a bar and had two drinks, lasting less than an hour. As Plaintiff and A.N. were preparing to go separate ways, the complaint alleges that A.N. "lunged" at Plaintiff for a kiss and then insisted that they go back to Plaintiff's house. (*Id.* at 4-5). Plaintiff drove A.N. to his home, and they arrived around 10:45 p.m., at which point they began having sexual intercourse. (*Id.*) The complaint states that surveillance video taken from Plaintiff's home clearly shows that A.N. was conscious and making sexual advances toward Plaintiff during their encounter at his home. (*Id.* at 7)

After approximately 15 minutes in Plaintiff's home, Plaintiff drove A.N. back to the bar so that A.N. could get back to her vehicle, but when they arrived at the bar, A.N. discovered that she did not have her keys. Plaintiff and A.N. efforted to locate A.N.'s keys, but after trips back to Plaintiff's home and to A.N.'s home for a spare set of keys, their efforts proved unsuccessful. Ultimately, both A.N. and Plaintiff believed that the keys must have been left with the valet at the bar, so Plaintiff dropped A.N. off at the bar around 12:00 a.m. (*Id.* at 7). Plaintiff waited in the parking lot of the bar for 15 minutes, and when he had not heard from A.N., Plaintiff called the bar to inquire whether A.N. was able to find her keys. An employee of the bar assured Plaintiff that she would help A.N. from that point, and Plaintiff returned home. (*Id.*) However, A.N. was not able to find her keys, and she was eventually driven home by another man she was dating. (*Id.*)

At approximately 3:00 a.m. on September 6, A.N. took an Uber to Hillcrest Medical Center for a sexual assault nurse examiner (SANE) test. (*Id.* at 8). Plaintiff alleges that A.N. told the SANE nurse that she could not remember what happened, but she apparently informed the nurse that she had sex with Plaintiff. During the examination, A.N. allegedly denied pain or notable injuries, and no physical injuries were observed. Although A.N. stated that she was "possibly drugged at some point," the Oklahoma State Bureau of Investigation (OSBI) reported that an

analysis of blood and urine samples taken from A.N. during the SANE examination did not find the presence of any drug in her system, aside from A.N.'s prescription medication. (*Id.* at 10). OSBI also released a report regarding a "sperm fraction" sample taken from A.N. during the examination, which found a "partial mixture of at least two individuals," neither of which matched Plaintiff's DNA profile. (*Id.* at 11).

In addition to the SANE and OSBI reports, the Tulsa Police Department (TPD) procured a search warrant of Plaintiff's home in September 2020 on suspicion of "drug-facilitated rape". (*Id.* at 9). They seized two iPhones, Plaintiff's DNA, an iPad, Apple laptop, medications, and two flash drives. No evidence of Rohypnol or GHB was found in Plaintiff's home. (*Id.* at 10). TPD also seized Plaintiff's home surveillance recordings from the night of September 5, which the complaint alleges revealed A.N.'s numerous sexual advances on Plaintiff that evening. TPD acknowledged Plaintiff as a "cooperative . . . detainee," and the complaint also underscores the fact that Plaintiff preserved all of the recordings, making no effort to destroy video or any other evidence related to the evening of September 5 precisely because he was blindsided by the accusations and so confident in his innocence.

On November 23, 2020, despite all of the information gathered and the lack of any evidence—aside from A.N.'s statement that she did not recall what transpired that evening—defendant Ehrenrich submitted a probable cause affidavit for the arrest of Plaintiff, charging Plaintiff with felony First Degree Rape, pursuant to Okla. Stat. tit. 21, § 1111(A)(4) and (5),[3] and

---

[3] In relevant part, § 1111(A)(4) and (5) defines 'rape' as an act of sexual intercourse where the victim "is intoxicated by a narcotic or anesthetic agent administered by or with the privity of the accused," or where the victim "is unconscious of the nature of the act," which is known to the accused.

3

in the alternative, Sexual Battery, pursuant to Okla. Stat. tit. 21, § 1123(B)(1).[4] (*Id.* at 11). The alternative charge against Plaintiff was later amended to Rape by Instrumentation, pursuant to § 1111.1.[5] After a five-day jury trial, Plaintiff was found not guilty on all charges on April 29, 2022. (Doc. 2 at 14-15).

Plaintiff filed suit in this Court on November 23, 2022, asserting claims against Ehrenrich under 42 U.S.C. § 1983 for unreasonable arrest in violation of his Fourth Amendment rights and malicious prosecution in violation of his Fourth and Fourteenth Amendment rights. (*Id.* at 15-18). Plaintiff also asserts a § 1983 municipal liability claim against Tulsa, based on Tulsa's failure to train or supervise TPD officers; an established pattern, practice, and custom of omitting exculpatory information from probable cause affidavits; and failure to reprimand or discipline TPD officers who violate the Fourth Amendment rights of citizens. (*Id.* at 18-20). In particular, the complaint alleges that the entire prosecution against Plaintiff hinged on the fact that A.N. was "unconscious to the nature of the act," which Plaintiff contends was plainly without evidence. (Doc. 2 at 14). The complaint further specifies at least 19 exculpatory facts that were known to Ehrenrich at the time the affidavit was signed but were omitted from the affidavit. (Doc. 2 at 12). Specifically, the complaint states that the material, exculpatory facts omitted from Ehrenrich's affidavit are as follows:

> **(1)** Lt. Ehrenrich had a pre-existing professional relationship with [A.N]; **(2)** [A.N.] stated that she only had "one or two" drinks on September 5 despite ample evidence that this was a lie; **(3)** it was not unusual for [A.N.] to experience memory loss when drinking alcohol; **(4)** [A.N.] recalls willingly going to Mr. Hankins' house with him and having physical contact with him in the kitchen; **(5)** the lab test results showed there were no drugs, aside from a prescription amphetamine, in [A.N.]'s system;

---

[4] In relevant part, § 1123(B)(1) defines 'sexual battery' as the "intentional touching, mauling or feeling of the body or private parts" without consent.

[5] Under Okla. Stat. tit. 21, § 1111.1, Rape by Instrumentation is defined in pertinent part as a nonconsensual, penetrative sex act "not amounting to sexual intercourse."

4

> **(6)** lab analysis showed that [A.N.] had DNA from at least two other males on her body; **(7)** the surveillance video from Mr. Hankins' patio shows [A.N.] wide awake and initiating physical contact with Mr. Hankins; **(8)** the surveillance video from Mr. Hankins' patio shows [A.N.] jumping into Mr. Hankins' lap, straddling him and placing her hands between his legs; **(9)** the surveillance video from Mr. Hankins' patio shows [A.N.] positioning her arms around Hankins' neck and throwing her legs around his waist; **(10)** three to six minutes of the contact between Hankins and [A.N.] -- on the patio – [were] not recorded; **(11)** after their contact at Mr. Hankins' house, Mr. Hankins took [A.N.] to her house to help her look for her keys; **(12)** "Ring" video from [A.N.]'s home, after the alleged "rape", shows Hankins and [A.N.] communicating on friendly terms; **(13)** "Ring" video from [A.N.]'s home, after the alleged "rape", shows [A.N.] is fully conscious; **(14)** [A.N.] never told the SANE nurse, nor any investigator, that she was unconscious during her contact with Mr. Hankins; **(15)** [A.N.] "den[ied] any pain or … notable injuries" after her contact with Hankins; **(16)** [A.N.] admitted that she had sex with Mr. Hankins, but never stated that any sex with Mr. Hankins was forced or nonconsensual; **(17)** [A.N.] did not tell the SANE nurse, nor any investigator, that she was "raped"; **(18)** no "date rape" drug, such as "Rohypnol" or "GHB", was found at Mr. Hankins' home, nor in [A.N.]'s blood or urine; and **(19)** even after submitting to a SANE examination, [A.N.] sent a text to Hankins, not to accuse him of raping her, but to ask whether he had found her keys.

(*Id.* at 12-13). Had the above omitted facts been included in the probable cause affidavit, Plaintiff maintains, there would not have been probable cause to arrest Plaintiff for any charges.

Both Defendants now move to dismiss the complaint in its entirety under Fed. R. Civ. P. 12(b)(6), arguing that it fails to state a claim upon which relief may be granted. (Docs. 8, 9). Specifically, Defendants contend that probable cause existed for Plaintiff's arrest, and therefore, no constitutional violation for his arrest or criminal prosecution occurred. Further, Tulsa argues that Plaintiff has failed to state a claim for municipal liability because the complaint does nothing more than recite the elements of a §1983 municipal liability claim. Plaintiff responded to the motions to dismiss, (Doc. 13, 14), and neither Defendant filed a reply.

## II. LEGAL STANDARDS

"The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's . . . complaint alone is legally

5

sufficient to state a claim for which relief may be granted." *Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*, 757 F.3d 1125, 1135 (10th Cir. 2014) (internal citations omitted). A complaint is legally sufficient only if it contains factual allegations such that it states a claim to relief that "is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555 (internal citations omitted) (alteration original). Instead, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). This plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* For the purpose of making the dismissal determination, a court must accept all the well-pleaded factual allegations of the complaint as true, even if doubtful, and must construe the allegations in the light most favorable to the plaintiff. *See Twombly*, 550 U.S. at 555; *Alvarado v. KOB–TV, L.L.C.*, 493 F.3d 1210, 1215 (10th Cir. 2007).

### III. DISCUSSION

#### A. False Arrest

Defendants first urge dismissal of Plaintiff's Fourth Amendment false arrest claim. Plaintiff's Fourth Amendment false arrest claim is asserted under the doctrine established by *Franks v. Delaware*, 438 U.S. 154 (1978). In *Franks*, the Supreme Court held that affiants seeking arrest warrants violate the constitution when they knowingly, or with reckless disregard for the truth, omit information which, if included, would prevent the warrant from lawfully issuing. *Id.* at 171; A *Franks* claim has two components, namely, a plaintiff must show that (1) the information

6

omitted from an arrest warrant was "material," such that its inclusion would have prevented the warrant from lawfully issuing; and (2) the officer acted knowingly or with reckless disregard in omitting the material information. *Kapinski v. City of Albuquerque,* 964 F.3d 900, 905 (10th Cir. 2020). Thus, in order for Plaintiff's *Franks* claim to survive a motion to dismiss, Plaintiff must plead facts sufficient to plausibly establish that Ehrenrich knowingly or recklessly omitted exculpatory information from the probable cause affidavit and that the omitted information would have vitiated probable cause for issuing the warrant.

Plaintiff maintains that at least 19 exculpatory facts were omitted from Ehrenrich's probable cause affidavit, and that the inclusion of those facts would have vitiated probable cause but for their omission. Defendants counter that none of the omitted facts would have prevented the arrest warrant from being lawfully issued. (Docs. 8 at 5-12). While Defendants deconstruct each individual alleged omission in atomistic fashion, the Tenth Circuit has counseled against viewing omitted statements in isolation when assessing the materiality of the omissions. *Puller v. Baca*, 781 F.3d 1190, 1197 (10th Cir. 2015) ("we measure probable cause by (1) removing any false information from the affidavit, (2) including any omitted material information, and then (3) inquiring whether the modified affidavit establishes probable cause for the warrant"). The Court does not agree that Plaintiff has failed to plead facts sufficient to establish a viable Fourth Amendment claim for relief under *Franks*. Specifically, the probable cause affidavit states that A.N. reported having a drink with Plaintiff and that "her next clear memory was standing in another bar . . . not knowing how she got there" (Doc. 8-1 at 1); yet, the complaint alleges that A.N. did, in fact, recall going to Plaintiff's home and having sexual relations with him, (Doc. 2 at 12-13). If true, such a plain contradiction casts serious doubt on the accusation that A.N. was unconscious— and therefore unable to consent—during her sexual encounter with Plaintiff. Further, the affidavit

7

details A.N.'s apparent intoxication from a surveillance video in Plaintiff's home, but it does not also provide information regarding the numerous sexual advances A.N. made on Plaintiff throughout the video, as is alleged in the complaint. (*Id.*) Lastly, though not exhaustively, Ehrenrich's affidavit notes that DNA tests revealed that Plaintiff "cannot be excluded as a potential contributor" but fails to state that results reflected a "partial mixture of at least two individuals" and that neither of which matched Plaintiff. (Doc. 2 at 11). This is not an exhaustive survey of the alleged omissions, and each issue considered above, standing on its own, may not have changed the balance of probable cause; however, when the omitted statements are taken together and viewed in a light most favorable to Plaintiff, the Court cannot say that every alleged omission was immaterial to procuring the arrest warrant. Consequently, Defendants' motions to dismiss Plaintiff's Fourth Amendment false arrest claim are DENIED.

### B. Malicious Prosecution

Defendants likewise challenge Plaintiff's malicious prosecution claim, asserting that probable cause existed for the arrest. (Doc. 8 at 12). Defendants support their contention by citing the same arguments raised in their Fourth Amendment challenge. (*Id.*) Defendants further assert that "several procedural checkpoints" in Plaintiff's criminal prosecution all affirmed the finding of probable cause. (*Id.*) However, for the reasons stated above, Plaintiff has pleaded sufficient facts to demonstrate that probable cause would not have existed but for the known or reckless omissions of fact. Moreover, the probable cause element for a malicious prosecution claim is "want of probable cause to bring the action." *Pierce v. Gilchrist*, 359 F.3d 1279, 1286 (10th Cir. 2004). Given that Plaintiff alleges Ehrenrich's suppression of exculpatory evidence was the basis for a finding of probable cause in bringing the action, the "procedural checkpoints" to which Defendants

refer are not necessarily relevant to the inquiry. Accordingly, Defendants' motions to dismiss Plaintiff's malicious prosecution claim are also DENIED.

### C. Municipal Liability

Lastly, Tulsa moves to dismiss Plaintiff's municipal liability claim. To establish municipal liability under § 1983, a plaintiff must show: "(1) the existence of a municipal policy or custom and (2) a direct causal link between the policy or custom and the injury alleged." *Graves v. Thomas*, 450 F.3d 1215, 1218 (10th Cir. 2006). The official policy requirement permits courts to "distinguish acts of the municipality from acts of employees of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 479 (1986).

A plaintiff can demonstrate a "municipal policy or custom" through an officially promulgated policy; a custom or persistent practice; a single decision by an official with final decision-making authority; ratification by an official with final decision-making authority of subordinates' decisions; or deliberately indifferent training that results in the violation of plaintiff's federally protected rights. *See Brammer–Hoelter v. Twin Peaks Charter Acad.*, 602 F.3d 1175, 1189 (10th Cir. 2010); *Smith v. Barber*, 195 F.Supp.2d 1264, 1271, n. 2 (D. Kan. 2002). Here, Plaintiff premises his municipal liability claim on inadequate training, the existence of a pattern or practice by Tulsa, and ratifying Ehrenrich's conduct that resulted in the deprivation of Plaintiff's constitutional rights. (Doc. 2 at 18-19). Tulsa argues that Plaintiff has failed to allege anything more than a recitation of the elements of a § 1983 municipal liability claim. (Doc. 8 at 14).

In analyzing the sufficiency of pleading in § 1983 municipal liability claims, this Court has generally followed the approach taken in *Thomas v. City of Galveston, Tex.*, 800 F.Supp.2d 826, 842 (S.D. Tex. 2011) and *Taylor v. RED Development, LLC*, , 2011 WL 3880881 (D. Kan. Aug.

31, 2011). *See Gooding v. Ketcher*, 838 F. Supp. 2d 1231, 1241 (N.D. Okla. 2012) ("the Court agrees with the approach recently taken in [*Taylor* and *Thomas*], wherein the court required more than boilerplate allegations of a municipal policy, but did not demand specific facts that prove the existence of a policy when a plaintiff would not have access to such information before discovery") (quotations and alterations omitted). Applying this approach, the Court finds that the Plaintiff's factual allegations are sufficient for the purposes of Tulsa's motion to dismiss. In particular, the complaint alleges the specific policy or custom at issue, namely, the omission of "exculpatory information from probable cause affidavits and other documents used to initiate criminal proceedings against citizens." (Doc. 2 at 19). The complaint further alleges that the risk accompanied by Tulsa's policy or custom with respect to omission of exculpatory information in procurement of an arrest warrant "was so obvious that it amounted to deliberate indifference." (Doc. 2 at 20). Thus, Plaintiff has done more than simply allege that Ehrenrich's conduct conformed to an official policy or practice, and instead, identified a specific practice to which the officer's conduct conformed. When viewed in a light most favorable to Plaintiff and granting all reasonable inferences, the Court cannot say that Plaintiff has failed to plead facts sufficient to establish a plausible municipal liability claim under § 1983. To the extent that Tulsa disputes the existence of such a policy or custom, it would be more appropriate to address that dispute on summary judgment, after the close of discovery. Accordingly, Tulsa's motion to dismiss Plaintiff's § 1983 municipal liability claim is DENIED.

## IV. CONCLUSION

For the reasons stated above, Defendants' motions to dismiss (Docs. 8, 9) are **DENEID**.

**SO ORDERED** this 15th day of September 2023.

TERENCE C. KERN
United States District Judge

10